Opinion issued February 22, 2024



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00752-CV

———————————

**BRICE BEALE AND SHUNIT ESTROV, Appellants**

**V.**

**MICHAEL AND ELIZABETH MANCHESTER, Appellees**

---

**On Appeal from County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1174167**

---

## MEMORANDUM OPINION

Appellants Brice Beale and Shunit Estrov appeal the trial court's order granting summary judgment in favor of appellees, Michael and Elizabeth Manchester, on their claims for trespass, breach of contract, and negligence. In two issues, Beale and Estrov contend that the trial court erred in (1) granting the

Manchesters' no-evidence motion for summary judgment on their trespass and breach of contract claims because they presented sufficient evidence to support their claims, and (2) entering a final summary judgment order because the Manchesters did not move for summary judgment on Beale and Estrov's negligence claim. We affirm in part, reverse in part, and remand.

## Background

Beale and Estrov and the Manchesters were next-door neighbors. On August 20, 2021, Beale and Estrov sued the Manchesters for trespass alleging that the Manchesters caused pesticides from a mosquito misting system to enter their property without their permission, causing injury. Beale and Estrov also sought a temporary restraining order to enjoin the Manchesters from continuing to spray in the same manner. Beale and Estrov amended their petition to add a claim for negligence.

The trial court granted Beale and Estrov's amended application for a temporary restraining order and later entered an order granting their application for temporary injunction.

Beale and Estrov filed a supplemental petition asserting a claim for breach of contract. The Manchesters filed an amended answer asserting a general denial and several affirmative defenses.

The Manchesters moved for no-evidence summary judgment on Beale and Estrov's claims for trespass and breach of contract. As to trespass, the Manchesters argued that there was no evidence that they entered Beale and Estrov's property; that such entry was physical, intentional, voluntary, and unauthorized; or that trespass caused injury to Beale and Estrov's right of possession. As to breach of contract, they argued that there was no evidence of a valid and enforceable contract or breach of any contract.

Beale and Estrov responded to the Manchesters' no-evidence motion arguing that sufficient evidence existed to create a fact issue as to each challenged element of their trespass and breach of contract claims. In support of their claims, Beale and Estrov attached their affidavits and a letter dated October 14, 2020 from Beale to the Manchesters' attorney summarizing a conversation between Beale and the Manchesters related to the Manchesters' pesticide application.

The Manchesters replied and objected to Beale and Estrov's summary judgment response. Specifically, they objected to Beale's affidavit on the grounds that his initial disclosures stated that he only sought non-monetary injunctive relief and he did not supplement his disclosures with the monetary damages set forth in his affidavit as required by Texas Rule of Civil Procedure 194. They further objected to Beale and Estrov's affidavits on the grounds that they were self-serving,

3

speculative and conclusory, unsupported by admissible evidence, required an expert opinion, and contained impermissible hearsay.

Beale and Estrov filed a sur-reply to the Manchesters' no-evidence motion arguing that (1) Rule 194 does not provide a basis for objecting to summary judgment evidence; (2) Texas follows the Property Owner Rule under which a property owner is allowed to testify about the value of his property and no expert testimony is required; (3) Beale and Estrov's affidavits were not conclusory and they established all facts necessary to prove their claimed damages; and (4) they were entitled to an award of nominal damages for trespass, regardless of whether actual damages were sustained.

The trial court granted the Manchesters' no-evidence summary judgment motion on September 23, 2022.[1] The order stated: "This is a Final Judgment disposing of ALL issues and ALL parties, and ALL prior interlocutory Orders are hereby made final." This appeal followed.

**Discussion**

Beale and Estrov present two issues on appeal. First, they contend that the trial court erred in granting the Manchesters' no-evidence summary judgment motion because they presented sufficient evidence to support their claims for

---

[1]     The record does not reflect a ruling by the trial court on the Manchesters' objections to Beale and Estrov's affidavits.

4

trespass and breach of contract. Second, they argue that the trial court erred when it entered a final order dismissing all their claims because the Manchesters did not move for summary judgment on their negligence claim.

## A.     Standard of Review

We review a trial court's ruling on a motion for summary judgment de novo. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). After an adequate time for discovery, a party may move for a no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of the claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the challenged elements. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Forbes, Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* at 172 (quoting *King Ranch v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003) (internal quotations omitted)). "More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions." *Id.* Unless the

5

nonmovant raises a genuine issue of material fact, the trial court must grant summary judgment. *See* TEX. R. CIV. P. 166a(i).

A party who files a no-evidence motion for summary judgment under Rule 166a(i) essentially requests a pretrial directed verdict. *Mack Trucks*, 206 S.W.3d at 581. We review the evidence presented by the summary judgment record in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

### A. Summary Judgment Affidavits

In support of their claims for trespass and breach of contract, Beale and Estrov attached their affidavits to their summary judgment response.

Estrov attested, in relevant part, as follows:

On or about July 21, 2021, over a year after Brice Beale first brought the pesticide drift issue to the Manchester[s'] attention, I saw Houston Mosquito Control Systems, a company which installs mosquito misting systems, outside the Manchesters' property.

On or about July 30, 2021, Houston Mosquito Control Systems began installing a mosquito misting system to 1406 Hewitt Drive, both along the fence bordering 1402 Hewitt Drive, Houston, Texas 77018 (the "Property") and along the front porch where there is no fence.

On August 18, 2021, at approximately 1:00 p.m., I saw the sprayers in use. I witnessed mist drifting onto the Property and gathering under the carport.

I previously did research regarding pyrethrins and pyrethroids, the active ingredients commonly used in mosquito misting systems, as well as the additives also present in the pesticides. Exposure to these chemicals poses a significant risk to people's health, especially children.

I am an owner of the Property, and the Manchesters do not have permission to cause pesticides to enter onto the Property. In addition to the many health and safety concerns that are supported by research and literature, the Manchesters' pesticide application prevents the use and enjoyment of the Property.

In his affidavit, Beale attested in part, as follows:

**<u>Regarding Ownership of 1402 Hewitt Drive</u>**

At all times relevant to this lawsuit, Shunit Estrov and I were the owners of 1402 Hewitt Drive (the "Property"), only having sold the property in May of 2022.

**<u>Regarding Trespass, the Contract, and the History of Pesticide Use</u>**

At no time relevant to this lawsuit, have I given the Manchester[s'] permission to enter onto 1402 Hewitt Drive. In fact, I spoke with Ms. Manchester on or about July 3, 2020, regarding the issue of spraying and my concerns about my children being exposed, the fact that it ruined the edible plants in the herb garden that borders the Property, and the effect on pollinators. I asked at that time that Ms. Manchester 1) let us know prior to future applications so that precautions could be taken to limit exposure, and 2) that steps be taken to avoid application in high winds or in any manner that caused the pesticides to come onto the Property. Ms. Manchester advised that she would do so, and that no additional applications were currently scheduled.

I was shocked to see that pesticide applications to 1406 Hewitt Drive continued in spite of Ms. Manchester's assurances. I know of at least two additional pesticide applications to 1406 Hewitt Drive by the same company and in the same manner complained of on July 3, 2020, one of which occurred around 11:00 am on August 19, 2020, and the

other of which occurred on September 16, 2020, around 8:30 am. In neither case were we informed of the scheduled application, and in both instances, pesticide was again applied in such a manner that pesticide vapor came onto the Property. Additionally, technicians applying the pesticide were again wearing protective gear.

On September 17, 2020, I sent the Manchesters a letter demanding that they cease and desist all pesticide application until it could be done in such a manner so as not to enter the Property. After several conversations, the Manchesters, through their attorney, assured me that they would not undertake any pesticide application on their property until such time as they could reasonably ensure that the pesticides being used are not coming onto the Property but refused to put anything in writing. Still, because of their agreement not to apply pesticides in such a manner as to cause them to drift on the Property and due to a desired [sic] to settle the matter peacefully, I refrained from involving the Court.

On October 14, 2020, I sent the Manchesters' counsel a letter memorializing the terms of this agreement. In it, I asked that if my rendition was inaccurate, for him to let me know. There was no response to this letter. A true and correct copy of the letter memorializing the terms of the parties' agreement is attached hereto as Exhibit A.

Unfortunately, the Manchesters failed to comply with the agreement. On or about July 21, 2021, over a year after Plaintiffs first brought the pesticide drift issue to the Manchester[s'] attention, Houston Mosquito Control Systems, a company which installs mosquito misting systems, was observed outside the Manchesters' property.

On July 22, 2021, I sent the Manchesters and their counsel a letter reminding them of their previous agreement not to undertake any pesticide application on their property until such time as they can reasonably ensure that the pesticides being used are not coming onto the property. I received no response.

On or about July 30, 2021, Houston Mosquito Control Systems began installing a mosquito misting system to 1406 Hewitt Drive, both

8

along the fence bordering the Property and also it appears in the front where there is no fence. I knocked on the Manchesters' door and spoke to Mr. Manchester. In the course of that conversation, it became apparent that Mr. Manchester was aware of my issues with the pesticide application onto 1406 Hewitt Drive and had received the letter sent on July 30, 2021. However, the conversation ended with Mr. Manchester defiantly stating that the misting system was going up, though with the caveat that the nozzles were being oriented in such a manner so as to ensure that the mist from the system would not drift onto the Property and would only be used in the early morning.

This assurance from the Manchesters, like their previous assurances, turned out to be an absolute falsehood. On August 18, 2021, at approximately 1:00 p.m., Shunit Estrov observed the nozzles in use. Large amounts of mist were seen drifting onto the Property and gathering under the carport.

One of the nozzles for the mosquito misting system was located on the fence between the Property and the Manchester[s'] house between 2 and 3 feet away from the air intake for the window unit air conditioner for the bonus room. Due to the proximity, after this, and subsequent use of the mosquito misting system, the bonus room and the items within the room took on a strong odor of pesticide, with some items acquiring a film or residue. The smell was so bad that it was even noted by the inspectors when the Property was sold.

**Regarding Damages**

The bonus room off of the garage stored a variety of collectibles and clothes.

There was a rack of clothes which included 2 tailored suits and 29 dress shirts. The suits cost approximately $1,000 apiece and the shirts ranged from $50 to $90 per shirt. Due to the pesticide exposure and resultant odor, all of these clothing items had to be discarded. At a minimum, the replacement value for these items is $3,450.

The collectibles included approximately 1,700 loose and packaged Transformers, including a near complete set (missing 1 item) of Generation 1 Transformers from 1984-1990. Based upon the

replacement value of similarly conditioned Transformers sold on marketplace websites like Ebay, this collection was worth approximately $30,000. This is an estimate based upon an average purchase price of $17. There were many single pieces in this collection that are worth in excess of $500, so this is an extremely conservative valuation.

In addition to the Transformers, there was also a complete collection of loose original Star Wars figures. Complete sets of this type frequently sell for $3,500 or more. These were all collected in my childhood.

The Transformers and Star Wars figures are currently in storage, since we do not want to bring them into our new home in their current condition. The storage unit costs approximately $90 per month.

I have done research into the cost of professionally cleaning the Transformers and Star Wars figures. Estimates have ranged from $2.00 to $10.00 or more per item. A conservative estimate to clean everything based upon the items in the collections is $4,500.

In addition to the clothes and the collectibles, there were 6 shelves and a leather chair in the bonus room that had to be discarded due to the odor. The cost to replace these items is approximately $1,000.

We were also forced to incur other costs, like car washes for the vehicle stored in the carport. While negligible, this cost was incurred at least twice at the approximate cost of $12 per wash.

Furthermore, once it became clear that the Manchesters were not going to stop using their mosquito misting system, we stopped using our carport entirely. From August 2021 through our move-out in May of 2022, we parked our second vehicle on the street to avoid any exposure to the pesticide. Based upon research, the average monthly cost of a parking space in Houston, Texas is between $195 and $265. Based on the lower end of that range, the fair market value as it relates to the loss of use of our carport for 10 months is approximately $1950.

10

Additional sources of damages would include loss of use of the herb garden, loss of use of the bonus room, and loss of use of the yard for the children to play in.

Based on the foregoing, we sustained at least $11,284 in damages, assuming the cost to clean the collectibles instead of replacement value. If replacement value is assumed, we sustained at least $40,284 in damages.

**B.    Trespass**

Beale and Estrov contend that the trial court erred in granting summary judgment on their trespass claim because they presented sufficient evidence to raise a fact issue on each element of their claim.

A "[t]respass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property." *Envtl. Processing Sys., L.C. v. FPL Farming Ltd*., 457 S.W.3d 414, 422 (Tex. 2015) (emphasis omitted); *see Tex. Woman's Univ. v. The Methodist Hosp*., 221 S.W.3d 267, 286 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("The entry need not be in person but may be made by causing or permitting a thing to cross the boundary of a property."). To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff. *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006,

11

pet. denied) (citing *Stone Res., Inc. v. Barnett*, 661 S.W.2d 148, 151 (Tex. App.—Houston [1st Dist.] 1983, no writ)).

In their summary judgment motion, the Manchesters argued that Beale and Estrov had no evidence that the Manchesters entered their property; that such entry was physical, intentional, and voluntary; or that it caused injury to Beale and Estrov. Thus, the Manchesters challenged the second and third elements of Beale and Estrov's trespass claim.[2]

### 1.     Physical, Intentional, and Voluntary Entry

With regard to the second element—that the Manchesters entered on their property and that the entry was physical, intentional, and voluntary—Estrov averred in her affidavit that:

- she saw Houston Mosquito Control Systems, a company which installs mosquito misting systems, outside the Manchesters' property in July 2021;

- nine days later, Houston Mosquito Control Systems began installing a mosquito misting system at the Manchester's property, both along the fence bordering Beale and Estrov's property and along the Manchesters' front porch where there is no fence; and

- she saw the sprayers in use in August 2021 and witnessed mist drifting onto the Property and gathering under the carport.

In his affidavit, Beale stated that:

- he spoke with Ms. Manchester in July 2020 about the spraying issue and his concerns about his children being exposed, the fact that it ruined the

---

[2]     The Manchesters did not challenge the first element, i.e., that Beale and Estrov had a lawful right to possess the property.

12

edible plants in the herb garden that borders his property, and the effect on pollinators;

- despite Ms. Manchester's assurance that she would notify Beale prior to future applications and ensure that steps were taken to avoid application in high winds or in any manner that caused the pesticides to come onto the Property, the pesticide applications continued;

- Beale knew of at least two additional pesticide applications in August 2020 and September 2020 and that, in both instances, pesticide was applied in such a manner that pesticide vapor came onto their property;

- Beale spoke to Mr. Manchester in July 2021 after Mosquito Control Systems began installing a mosquito misting system at the Manchesters' property. During the conversation, it became apparent to Beale that Mr. Manchester was aware of his issues with the pesticide application. Mr. Manchester stated that the misting system was going up with the caveat that the nozzles were being oriented in such a manner so as to ensure that the mist from the system would not drift onto the property and would only be used in the early morning.

- On August 18, 2021, at approximately 1:00 p.m., Estrov observed the nozzles in use. Large amounts of mist were seen drifting onto the Property and gathering under the carport.

Estrov's testimony that she saw the sprayers of the Manchesters' mosquito misting system in use in August 2021, and that she witnessed mist drifting onto the property and gathering under the carport, is sufficient to raise a fact question regarding whether the Manchesters caused or permitted the mist to enter upon Beale and Estrov's property. Beale's testimony that Mr. Manchester told him that the "misting system was going up," despite being aware of Beale's concern with the pesticide applications, is sufficient to raise a fact question regarding whether the unauthorized entry was voluntary and intentional. See *Nugent v. Pilgrim's Pride*

13

*Corp.*, 30 S.W.3d 562, 575 (Tex. App.—Texarkana 2000, pet. denied) ("Intent can be shown by proof that, while the actor did not know that his conduct would result in trespass, his actions were practically certain to have that effect."). Beale and Estrov produced more than a scintilla of evidence of the second element of their trespass claim. *See id.* at 576 (holding genuine issue of material fact existed regarding whether contamination of farm owner's land by airborne particles—which came from adjoining landowners' release of material containing contaminants into atmosphere that intermittently drifted onto farm owners' property—constituted trespass, precluding no-evidence summary judgment).

### 2.    Injury

With regard to the third element—that the defendant's trespass caused injury to the plaintiff—Beale and Estrov contend that every unauthorized entry is a trespass and, therefore, a plaintiff is entitled to nominal damages even if no actual damage is done. They further argue that they presented evidence showing that they sustained at least $11,284 in damages as a result of the Manchesters' unauthorized entry onto their property.

To support their trespass claim, Beale attested to the following damages to their personal property caused by the Manchesters' unauthorized entry:

- Replacement value of two tailored suits and twenty-nine dress shirts: $3,450

- Replacement value of collectibles, including 1,700 loose and packaged Transformers and Star Wars figures: $33,500

- Cost of storage unit for collectibles: $90 per month

- Cost to professionally clean Transformers and Star Wars figures: $4,500

- Replacement cost of six shelves and leather chair: $1,000

- Cost of car washes for the vehicle stored in carport: $12 per wash

- Fair market value related to loss of use of carport for 10 months: $1,950

- Loss of use of the herb garden, bonus room, and yard for the children

- Based on the foregoing, at least $11,284 in damages, assuming the cost to clean the collectibles instead of replacement value. If replacement value is assumed, at least $40,284 in damages.

The Manchesters respond that Beale and Estrov failed to offer any evidence of actual exposure or of a nexus between any alleged damages to their property and the Manchesters' mosquito spray. We disagree. Beale and Estrov testified that (1) they saw the mist from the Manchesters' misting system enter their property; (2) they smelled the pesticide in their bonus room; (3) their potential buyers' inspectors smelled the pesticide in their bonus room; and (4) they felt the pesticide residue on their personal items. They testified that their personal items were covered with

residue and needed to be professionally cleaned or replaced as a result of the Manchesters' continued use of their misting system.

The Manchesters also argue that Beale's affidavit testimony about the types and amount of damages sustained is unsupported by other evidence. This argument is equally unavailing. A property owner may opine about the value of his own property. *See Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd*, 337 S.W.3d 846, 852 (Tex. 2011) (noting Property Owner Rule holds that property owner is qualified to testify to value of his property even if he is not expert and would not be qualified to testify to value of other property); *Del Mar Capital, Inc. v. Prosperity Bank*, No. 01-14-00028–CV, 2014 WL 5780302, at *5 (Tex. App.— Houston [1st Dist.] Nov. 6, 2014, no pet.) (mem. op.) ("The Property Owner Rule, as its name suggests, excepts property owners from the requirement that an expert testify on the valuation of the property."); *see also Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002) (noting that for household goods having no recognized market value, "[t]he trier of fact may consider, in determining the actual value to the owner at time of loss, the original cost, cost of replacement, opinions of qualified witnesses, including the owner, the use to which the property was put, as well as any other reasonably relevant facts") (quoting *Allstate Ins. Co. v. Chance*, 590 S.W.2d 703, 704 (Tex. 1979)). The rule is based on the presumption that a property owner is familiar with his property and its value. *See Speedy Stop*, 337 S.W.3d at 852.

Beale's testimony about the value of his property is sufficient to raise a fact issue with regard to the damages sustained as a result of the Manchesters' unauthorized entry.[3]

---

[3] In their summary judgment reply, the Manchesters objected to Beale's affidavit testimony regarding monetary damages on the grounds that Beale and Estrov's initial disclosures stated that they only sought non-monetary injunctive relief and they did not supplement their disclosures as required by Texas Rules of Civil Procedure 193.5(a). They further objected that Beale's affidavit was self-serving, conclusory, and it contained impermissible hearsay.

A party must object to a defect in the form of an affidavit and secure a ruling from the trial court on the objection to preserve the error on appeal or else the objection is waived. *See* TEX. R. CIV. P. 166a(f); *see Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (per curiam). Defects in form include objections to hearsay, self-serving statements, and unsubstantiated opinions. *UT Health Sci. Ctr.–Houston v. Carver*, No. 01-16-01010-CV, 2018 WL 1473897, at *5 (Tex. App.—Houston [1st Dist.] Mar. 27, 2018, no pet.) (mem. op.). A defect in the substance of an affidavit is not waived by failure to obtain a ruling from the trial court on the objection and may be raised for the first time on appeal. *Id.* at *5. Defects in substance include statements that are conclusory. *Id.*

The Manchesters' objection that Beale and Estrov did not include monetary damages in their initial disclosures is not an objection to a defect in the substance of the affidavits but more akin to one of form, i.e., the affidavits are inadmissible because the alleged monetary damages were not disclosed as required by Rule 194.2. Because the Manchesters did not obtain a ruling on their objection, they waived this objection on appeal. *See id.* However, even absent waiver, the record reflects that Beale and Estrov supplemented their initial disclosures the same day they filed their summary judgment sur-reply and one day after the Manchesters raised the objection in their summary judgment reply. *See* TEX. R. CIV. P. 193.5(a) (stating supplemental response must be made reasonably promptly after party discovers necessity for supplementation). The Manchesters' objections to the affidavits as self-serving and containing impermissible hearsay are objections to the form of the affidavits and are also waived. *See Carver*, 2018 WL 1473897, at *5. Their objection to Beale's affidavit as conclusory, although one of substance and therefore not waived, is unavailing. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Lenoir v. Marino*, 469

17

Beale and Estrov produced more than a scintilla of evidence raising a fact question on the challenged elements of their trespass claim. The trial court erred in granting summary judgment on their trespass claim. *See Forbes*, 124 S.W.3d at 172.

## D.    Breach of Contract

Beale and Estrov contend that the trial court erred in granting summary judgment on their breach of contract claim because they presented sufficient evidence to raise a fact issue on each element of their claim.

A plaintiff must prove the following elements to prevail on a breach of contract claim: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages to the plaintiff resulting from the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019); *West Loop Hospitality, LLC v. Hous. Galleria Lodging Assocs.*, LLC, 649 S.W.3d 461, 491 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). The elements of a valid contract are: (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 104 (Tex. App.—

---

S.W.3d 669, 686 (Tex. App.—Houston [1st Dist.] 2015), *aff'd*, 526 S.W.3d 403 (2017). Here, Beale's affidavit contained the underlying factual information upon which he based his damages calculation and, as noted above, Beale, as the property owner, was qualified to testify about the value of his property. *See Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002).

Houston [1st Dist.] 2015, no pet.). Generally, acceptance of an offer must be communicated to the offeror for a contract to be binding. *Levin Law Grp., P.C. v. Sigmon*, No. 14-08-01165-CV, 2010 WL 183525, at *3 (Tex. App.—Houston [14th Dist.] Jan. 21, 2010, pet. denied) (mem. op.).

The elements of written and oral contracts are the same and must be present for a contract to be binding. *Tyco Valves & Controls, L.P. v. Colorado*, 365 S.W.3d 750, 771 (Tex. App.—Houston [1st Dist.] 2012), *aff'd*, 432 S.W.3d 885, 894 (Tex. 2014); *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In determining the existence of an oral contract, courts look to the communications between the parties and to the acts and circumstances surrounding those communications. *Wray v. Picard*, No. 01-19-00188-CV, 2020 WL 4517329, at *7 (Tex. App.—Houston [1st Dist.] Aug. 6, 2020, no pet.) (mem. op*); Prime Prods., Inc. v. S.S.I. Plastics, Inc*., 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

In their no-evidence motion, the Manchesters argued that Beale and Estrov had no evidence that there was a valid and enforceable contract or that the Manchesters breached any such contract. Thus, the Manchesters challenged the first and third elements of Beale and Estrov's breach of contract claim.

In support of their contention that an agreement between the parties existed, Beale and Estrov point to Beale's affidavit testimony that:

19

- on September 17, 2020, he sent a letter to the Manchesters demanding that they cease and desist all pesticide application until it could be done without entering Beale and Estrov's property;

- the Manchesters, through their attorney, assured Beale that they would not undertake any pesticide application on their property until they could ensure that the pesticide was not entering Beale and Estrov's property but refused to put anything in writing;

- due to the Manchester's agreement and in a desire to settle the matter peacefully, Beale refrained from instituting legal action; and

- on October 14, 2020, Beale sent the Manchesters' attorney a letter memorializing the terms of the agreement, but he received no response.

In his October 14, 2020 letter to the Manchesters' attorney, Beale stated, "per our conversation on Monday, October 12, it is my understanding that your clients are not going to continue spraying/applying pesticides in the manner addressed in my cease and desist letter dated September 17, 2020. Specifically, the Manchester's [sic] will not have their yard fogged, but will have future applications done in such a manner as to keep pesticides from crossing over onto 1402 Hewitt Drive."

Beale's statement that the Manchesters' attorney communicated the Manchesters' assurance to him that they would not undertake any further pesticide application until they could ensure it was not entering Beale and Estrov's property does not establish acceptance of an offer. At most, Beale's statement shows that the Manchesters' assurance that they would refrain from continuing to spray was in

response to his September 17, 2020 cease and desist letter. Beale's testimony that "because of their agreement not to apply pesticides in such a manner as to cause them to drift on the Property and due to a desired to settle the matter peacefully, I refrained from involving the Court" suggests that Beale's decision not to institute legal action came after, and in response to, the Manchesters' assurance that they would not continue spraying. These statements are not evidence of an offer and acceptance.

Further, as noted above, in determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding those communications. *See Wray*, 2020 WL 4517329, at *7. Here, the evidence shows that the Manchesters refused to put the parties' purported agreement into writing and that there was no response to Beale's letter allegedly memorializing the parties' agreement. Silence and inaction will generally not be construed as an assent to an offer. *See Texas Ass'n of Counties Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 132 (Tex. 2000); *Levin Law Grp.*, 2010 WL 183525, at *4 (concluding that attorney's silence did not indicate acceptance of offer where law firm's only evidence offered to support its claim that attorney orally agreed to mediate under written terms provided by firm was attorney's lack of objection to terms); *Beverick v. Koch Power, Inc.*, 186 S.W.3d

145, 152 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("Silence cannot satisfy the basic requirements of contract creation.").

Because Beale and Estrov did not bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the existence of a valid and enforceable contract, the trial court properly granted summary judgment on Beale and Estrov's breach of contract claim. *See Forbes*, 124 S.W.3d at 172.

We sustain in part, and overrule in part, Beale's and Estrov's first issue.

## 5. Negligence Claim

In their second issue, Beale and Estrov contend that the trial court erred in entering a final summary judgment order because the Manchesters did not move for summary judgment on their negligence claim.

In their second amended petition and application for temporary restraining order, Beale and Estrov alleged:

> In addition to trespass, Defendants' actions constitute negligence. Defendants have a duty to not cause chemicals to be dispersed onto the property of another. Defendants have been repeatedly made aware of this duty. Inexplicably, Defendants have chosen to continue to broadcast pesticides in a method and manner that is injurious to Plaintiffs, which in many ways goes beyond simple negligence and demonstrates a complete reckless disregard for the rights and property of Plaintiffs. Specifically, Defendants have engaged in uncontrolled misting/fogging of pesticides that has impaired Plaintiffs' ability to use and enjoy their property.

The Manchesters' no-evidence motion does not address Beale and Estrov's negligence claim. In its summary judgment order, the trial court stated, "Defendants'

No-Evidence Motion for Summary Judgment is granted, disposing of all of Plaintiffs' causes of action. "This is a Final Judgment disposing of ALL issues and ALL parties, and ALL prior interlocutory Orders are hereby made final."

A summary judgment motion "must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Vertex Servs., LLC v. Oceanwide Hous., Inc.*, 583 S.W.3d 841, 852 (Tex. App.—Houston [1st Dist.] 2019, no pet.). A trial court can only grant summary judgment on the grounds addressed in the summary judgment motion. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("A judgment that grants more relief than a party is entitled to is subject to reversal . . . ."). Unaddressed issues or claims cannot be a basis for summary judgment. *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam)).

A limited exception, however, applies where the unaddressed cause of action is precluded as a matter of law by other grounds raised in the case. *See G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (citing *Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.)); *see also PAS, Inc. v. Engel*, 350 S.W.3d 602, 610 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("The application of an exception requires 'a very tight fit' between what was proved or disproved in the motion and what elements must be proved or disproved for the

unaddressed claim." (citing *Wilson*, 305 S.W.3d at 73)). "In such a case, a party has moved for summary judgment but omitted at least one ground or cause of action." *Sweet Water Well Serv., LLC v. W. Hous. Airport Corp.*, No. 14-18-00596-CV, 2020 WL 5048356, at \*3 (Tex. App.—Houston [14th Dist.] Aug. 27, 2020, no pet.) (mem. op.). If the omitted ground shares a common element or is derivative of a cause of action on which summary judgment was properly granted, then the error is harmless, and the judgment of the trial court should be affirmed. *See Wilson*, 305 S.W.3d at 74–75 (concluding exception did not apply because none of "unaddressed liability theories or claims" were derivative of any other and did not share same elements as addressed theories); *Engel*, 350 S.W.3d at 609–10 (concluding exception did not apply to unaddressed claim of breach of fiduciary duty under "common ground" argument where trial court granted summary judgment on fraud claim); *Zarzosa v. Flynn*, 266 S.W.3d 614, 621 (Tex. App.—El Paso 2008, no pet.) ("Since the misrepresentation element of [plaintiff's] fraud and fraudulent inducement claims has been disposed of, reversal of the summary judgment for consideration of those claims would be meaningless in this case.").

As noted above, to prevail on a trespass claim, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff. *Wilen*, 191 S.W.3d at

24

798. To establish negligence, a party must establish a duty, a breach of that duty, and damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

The Manchesters respond that they sufficiently addressed all of Beale and Estrov's claims in their motion. They argue that even if the negligence claim was omitted from their motion, such error was harmless because it was precluded by the lack of evidence of damages which is a shared element among the asserted claims.

As discussed above, Beale and Estrov produced more than a scintilla of evidence raising a fact issue regarding the alleged damages they sustained as a result of the Manchesters' unauthorized entry onto their property. In light of our conclusion that the trial court erred in granting summary judgment on their trespass claim, the Manchesters' reliance on the harmless error exception is unavailing. *See Magee*, 347 S.W.3d at 296–98 (stating if omitted ground shares common element or is derivative of cause of action on which summary judgment was *properly granted*, then error is harmless and judgment of trial court should be affirmed) (emphasis added).

The Manchesters' no-evidence summary judgment motion did not place Beale and Estrov's negligence claim before the trial court. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (stating trial court may not grant summary judgment on grounds not presented in motion); *Narnia Invs., Ltd. v. Harvestons Sec., Inc.*, No. 14-10-00244-CV, 2011 WL 3447611, at *5 (Tex. App.—Houston [14th

25

Dist.] Aug. 9, 2011, no pet.) (mem. op.) (holding trial court erred in granting summary judgment on claims not addressed in summary judgment motion because motion "neither conclusively disprove[d] any element" "nor challenge[d] the existence of any evidence of any element" of unmentioned claims). Nevertheless, the trial court granted the Manchesters' summary judgment motion and dismissed all of Beale and Estrov's claims against them. The trial court erred in granting relief to the Manchesters on Beale and Estrov's negligence claim because it was not addressed in their motion; therefore, we sustain Beale and Estrov's second issue. *See Lehmann*, 39 S.W.3d at 200.

## Conclusion

We affirm the portion of the trial court's order granting summary judgment on Beale and Estrov's breach of contract claim. We reverse the portion of the trial court's order granting summary judgment on Beale and Estrov's trespass and negligence claims and remand the case to the trial court for proceedings consistent with this opinion.

Amparo Monique Guerra
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

26